IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re

Mark Alan McLaughlin

and

Melissa Lynne McLaughlin,

          Debtors.

In Chapter 13 Proceedings

Case No. 07-04375

MEMORANDUM DECISION

(Opinion to Post)

## **I. PRELIMINARY STATEMENT**

This matter comes before the Court on a "Motion for Citation of Contempt and Motion for Assessment of Sanctions"[1] ("Motion") filed by Mark and Melissa McLaughlin, the Debtors herein, on September 28, 2007. The Debtors alleged that although they were, and are, currently involved in an active Chapter 7 proceeding, one of their creditors, Red Mountain Funding, LLC ("Red Mountain" or the "Creditor"), persisted, post-petition, in making disturbing telephone calls to the Debtors, even though it knew that the Debtors had filed a bankruptcy petition in an effort to collect on its pre-petition claim against the Debtors. This Court held an expedited hearing in the matter on September 15, 2007, at which the Debtors were the only parties present.[2] At the hearing, the Court concluded that the Debtors had presented, at least, a prima facie case that the automatic stay had been willfully violated by Red Mountain, and the Debtors indicated that they wished to present evidence to the Court regarding the issue of damages. The Court continued the hearing on the issue of

---

[1] Docket Entry No. 28.

[2] Although notice of the hearing was served on Red Mountain Funding (Docket Entry No. 34), no representative of that creditor appeared.

damages to October 23, 2007.  At the continued hearing, the Debtors were again present.  However, Mr. Bryan Sammons, the president of Red Mountain Funding, also was present on behalf of the Creditor.  The Court allowed each side to present evidence.  At the conclusion of the evidentiary hearing, the Court took this matter under advisement.

This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, Bankruptcy Rule 7052.  The Court has jurisdiction over this matter, and this is a core proceeding.  28 U.S.C. §§ 1334 and 157 (West 2006).

## II. FACTUAL DISCUSSION

The Debtors filed their petition for Chapter 7 relief on August 31, 2007.  The Debtors testified that they faxed notice of their bankruptcy filing to Red Mountain on the petition date.  They filed their Master Mailing List on September 5, 2007,[3] listing Red Mountain Funding, LLC thereon.  Red Mountain did not dispute that it received notice of the Debtors' bankruptcy filing.  Red Mountain holds a security interest in the Debtors' only vehicle, and is listed on the Debtors' Schedule D as a secured creditor.  The Debtors testified that the vehicle was essential to the family, because Mr. McLaughlin works nights, and Ms. McLaughlin both works and attends school.  The Debtors also provide transportation to their children to and from school.

The Debtors' case was dismissed on September 18, 2007, for the Debtors' failure to file a Declaration Concerning Payment Advices.[4]  The next day, however, the Debtors filed their Declaration,[5] and on September 21, they filed an Emergency Motion to Reinstate their case.[6]  The Motion was granted, and the case was reinstated on September 21,

---

[3] See Docket Entry No. 13.

[4] See Docket Entry No. 19.

[5] See Docket Entry No. 21.

[6] See Docket Entry No. 23

2

2007.[7] The Bankruptcy Noticing Center mailed notice of the reinstatement to all creditors on the Master Mailing List, including Red Mountain, on the same day.[8] Red Mountain did not dispute that it was notified of the reinstatement of the Debtors' case.

To understand the Debtors' extreme distress or emotional stress, the Court must review the actions taken by Red Mountain just prior to the Debtors' filing their bankruptcy petition. The Debtors credibly testified, and the emotional distress encountered by them was palpable at the time of trial, that Red Mountain had threatened to have Mr. McLaughlin incarcerated, "for a Class 6 felony," if the Debtors did not immediately return the vehicle to Red Mountain. Because of the fear incarceration, the Debtors felt that they had no choice but to file a bankruptcy petition.

Apparently the Debtors began receiving disturbing debt collection phone calls from Red Mountain as early as July, 2007. Mr. Sammons, the President of Red Mountain, provided business records which reflected such contact with the Debtors. Mr. Sammoms testified that the initial contact was made because in July, 2007, the Debtors had failed to provide proof of insurance on the vehicle that served as Red Mountain's collateral. However, Red Mountain's records of the Debtors' account do not reflect any insurance issues after July, 2007; rather, the Red Mountain records focus on a failure to receive payments.[9]

The Debtors testified that Red Mountain's phone calls became increasingly hostile in August. Red Mountain's own records reflect repeated calls to the Debtors' cell phone and place of employment. The Debtors also testified that on August 30, 2007, Red Mountain had called them to demand that the Debtors pay a large sum of money to the Creditor within the hour. Not only did Red Mountain threaten to repossess the Debtors' vehicle, but it is at this point when it threatened to proceed with criminal charges against the

---

   **7** See Docket Entry No. 24.

   **8** See Docket Entry No. 25.

   **9** See Exhibit A. For instance, review the Red Mountain notes for the month of August, 2007.

3

Debtors and to have Mr. McLaughlin arrested.[10] The Debtors were so agitated by Red Mountain's threats that they requested extra police patrols in their neighborhood on August 30, 2007.[11]

It was in this distraught state of mind that the Debtors filed their bankruptcy petition on August 31, 2007. The Debtors received a message on their voicemail that day from Red Mountain, requesting that the Debtors return the call.[12] The Debtors did not do so; rather, they faxed a notice of their bankruptcy filing to the Creditor. The Debtors believed that Red Mountain would cease any contact with them as a result of the bankruptcy filing.

---

**10** The Court can find no legal basis for this aggressive posture if the Debtors were merely unable to provide proof of insurance. At the October 23rd hearing, Mr. Sammons was unable to provide any evidence to support his allegation that the Debtors had not paid for the insurance on the vehicle, and the Red Mountain records do not reflect any such deficiency. The records only reflect a call concerning insurance in July, but no further concern thereafter. Even if the Debtors did not have insurance on the vehicle, the Court can see no basis for Red Mountain's aggressive posture. Although Arizona's financial responsibility laws require drivers of motor vehicles to carry certain liability insurance, the penalties for violation of these laws are civil in nature. See A.R.S. §§ 28-4009, 28-4135. Additionally, these laws provide for state enforcement; they create no private right or cause of action. Criminal penalties may be assessed for certain violations of Arizona's transportation statutes; however, such penalties do not apply to Article 9, in which Arizona's financial responsibility laws are found. Id. § 28-121.

Arizona law does provide that a person may be charged with a Class 6 felony if that person "fails to make a payment on the lien [on a motor vehicle subject to a security interest] for more than ninety days." A.R.S. § 13-1813 (2007). However, Mr. McLaughlin testified that it had only been 20 days since he had made a payment on the lien. Moreover, the Red Mountain records reflected that the communication only commenced with the Debtors in July, and at that time, the Creditor's concern was an inability to verify appropriate insurance coverage. Thus, the requisite 90-day period had not yet passed which would warrant the Creditor's threat under Section 13-1813. Therefore, the Court concludes that the Creditor had no basis with which to threaten the Debtors with criminal charges.

**11** See Exhibit 3.

**12** It is unclear to this Court if the contact was computer generated, or if an individual from the Creditor actually left a message. Red Mountain lacks any record of this call. See Exhibit A. The records appear to be incomplete in other respects. For example, an entry on September 25, 2007, states that the Debtors' "case has been reinstated." However, there is no prior entry indicating that a bankruptcy case had initially been filed, and no entry indicating that such a case had been dismissed.

4

On September 5, 2007, the Debtors received a computer-generated message from Red Mountain instructing the Debtors that it was "imperative" they return the call by one o'clock the next afternoon. The call greatly disturbed the Debtors. They had not forgotten the Creditor's pre-petition threats to repossess their only vehicle and to have Mr. McLaughlin arrested. On September 6, 2007, Ms. McLaughlin returned the call, because Mr. McLaughlin was too emotionally upset to speak with the Creditor.[13] Ms. McLaughlin spoke with an employee of Red Mountain, a "Mr. Al Vent,[14]" and informed him of the bankruptcy filing. The employee assured Ms. McLaughlin that she would receive no further contact, and that she had received the computer-generated message by mistake, as she had been placed in the incorrect "queue."[15] The employee never discussed a reaffirmation agreements or any lack of insurance with Ms. McLaughlin.

The harassment did not stop. On September 25, 2007, the Debtors received yet another message instructing them to return Red Mountain's call on an emergency basis within the hour. Mr. McLaughlin returned the call, and informed Red Mountain that although the Debtors' bankruptcy case had been dismissed on September 18, it had been reinstated on the 21st.[16] The Red Mountain representative apparently ignored Mr. McLaughlin's statement and asked when the vehicle could be repossessed. Mr. McLaughlin again informed the representative that he had an active bankruptcy case, and that a call to the Bankruptcy Court would verify the statement. The Red Mountain representative then threatened to send law enforcement officials to Mr. McLaughlin's home, presumably to arrest Mr. McLaughlin, and

---

[13] Mr. McLaughlin testified that he suffered from Crohn's Disease, which is debilitating, at times, for him, depending on the level of stress that he is enduring. He stated that he was incapable of functioning that day because of the stress that he was enduring.

[14] Unfortunately, because Ms. McLaughlin's testimony was verbal on the point, the Court is unsure whether this phonetic spelling of the employee's name is correct.

[15] Red Mountain lacks any record of this call. See Exhibit A. However, as noted previously, there were other omissions in the Red Mountain records.

[16] As noted above, notice of the reinstatement was issued to Red Mountain on September 21.

5

to institute litigation against him.  Again, Mr. McLaughlin stated that his bankruptcy case was active.  Although Mr. Sammons argued that because the Debtors were pro se, the Red Mountain representative was contacting the Debtors to obtain proof of insurance or to inquire whether the Debtors would enter into a reaffirmation agreement, there is no evidence in the Red Mountain records to reflect that such issues were ever discussed with the Debtors in September, 2007.[17]

The very next day, September 26, 2007, the Debtors received a computer-generated voicemail message from Red Mountain, requesting they call the Creditor.  The Debtors ignored this message, and filed their Motion with the Court, requesting the Court issue a citation of contempt for Red Mountain's violation of the automatic stay.

The Debtors appeared at the hearing the Court set on their Motion on October 15, 2007.  Although Red Mountain received notice of the hearing,[18] no representative appeared on its behalf.  However, a representative of Red Mountain Funding did call the Debtors the next day, October 16, 2007.  That person left a voicemail message for the Debtors, stating that the Debtors had been called several times and that it was imperative that they return Red Mountain's call within an hour.

Red Mountain declined to file anything with the Court or appear before it until the date of the evidentiary hearing on October 23, 2007.  At that time, Mr. Sammons appeared and presented several exhibits, which were admitted into evidence.  Mr. Sammons did not effectively controvert the Debtors' testimony.  Rather, he testified that the only reason Red Mountain would contact a debtor in bankruptcy would be to discuss proof of insurance or to induce the debtor to enter into a reaffirmation agreement.  Mr. Sammons conceded, however, that the Red Mountain records did not reflect any conversations with the Debtors about a reaffirmation agreement and that any reference to insurance had only appeared in the

---

**17** See Exhibit A.

**18** Docket Entry No. 34.

6

Case 2:07-bk-04375-SSC    Doc 45    Filed 10/30/07    Entered 10/30/07 12:52:54    Desc
Main Document    Page 6 of 13

Red Mountain notes in July, 2007.[19] Given the Debtors' credible testimony and the lack of detail or omissions in the Red Mountain records, the Court concludes that Red Mountain exhibited a pattern of harassment toward the Debtors.

The Debtors testified, at length, about the difficulties that they had encountered due to the stress the stay violations had placed upon them. Mr. McLaughlin lost wages when he took time off from work to appear in Court and prosecute the stay violation, on October 15 and October 23, 2007.[20] He also took time off from work on October 18, 2007, when he and his wife prepared their carefully researched legal memorandum, assembled and organized exhibits for the evidentiary hearing, and checked with a local justice court to determine whether the Creditor had actually filed criminal charges against him.

Moreover, Mr. McLaughlin was placed under significant stress by the Creditor's threats, including the threat that Mr. McLaughlin would be arrested. This stress aggravated the Crohn's Disease from which he suffers. He could not go to work on September 6 or 26, 2007, as a result of his stress, and the complications therefrom, including severe abdominal pains and chest pains. On the days he could attend work, Mr. McLaughlin experienced so much mental anguish that he was unable to concentrate adequately on his

---

[19] See Exhibit C. Red Mountain's repossession agent did contact Red Mountain on September 19, and Red Mountain instructed the agent to keep the Debtors' account on hold because of the Debtor's bankruptcy filing. Apparently Red Mountain had ordered its repossession agent to recover the Debtors' vehicle pre-petition. But due to the Debtors' promise that they would try to obtain funding to pay off the Creditor, Red Mountain had placed the Debtors' account "on hold" on August 30, 2007. However, the Red Mountain notes do not reflect that once the Debtors filed bankruptcy, the agent was contacted again of the bankruptcy filing. It was only when the repossession company contacted Red Mountain on September 19, 2007, that Red Mountain informed the agent of the bankruptcy filing and requested that the account remain on hold.

[20] Ms. McLaughlin testified that she had been unable to attend to student teaching obligations because of the stay violation hearings. She stated that she was two weeks behind in her school work, and was also unable to concentrate while she was at her paid job, because she was so concerned that her car would be taken from the parking lot or that her husband would be arrested. However, she presented no evidence concerning lost wages, so the Court cannot conclude that her absence from or inability to concentrate at work resulted in any actual monetary damages.

7

work, and was removed, with his consent, from his supervisory position with his employer.[21] As of the October 23 hearing, he had not resumed any supervisory duties. The Debtors both testified that they felt extremely worried each time the Creditor left them messages, and had, after such occasions, spent sleepless nights, anxiously keeping watch lest the Creditor attempt to repossess their vehicle or have Mr. McLaughlin arrested. The Debtors seek sanctions against Red Mountain for their lost wages, the time spent prosecuting the instant matter, and their emotional distress.

### III. LEGAL DISCUSSION

**A. The Creditor Violated the Debtor's Automatic Stay**

The filing of a petition for relief under the Bankruptcy Code operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (West 2007). This automatic stay is intended to give the debtor some "breathing room" and the chance to effect a plan of reorganization or repayment. Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams), 127 B.R. 239, 241 (9th Cir. B.A.P. 1991).

"[A]n individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees." Id. § 362(k). A willful violation of the stay occurs when 1.) a creditor had notice of the debtor's bankruptcy filing, and 2.) the creditor's actions that violated the stay were intentional. In re Bloom, 875 F.2d 224, 227 (Ninth Cir. 1989).[22] The law imposes an "affirmative duty to remedy the automatic stay

---

[21] See Exhibit 1. The Debtor did not, however, experience any reduction in pay, so the Court cannot assess any actual monetary damages related to the change in employment. Additionally, it was uncertain whether the change in position would be permanent, or whether at some time in the future the Debtor would feel able to resume supervisory duties.

[22] Although Bloom, Abrams, and other cases cited in this Decision were decided prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23 ("BAPCPA"), BAPCPA did not substantively amend the portion of the statute mandating damages for stay violations. The section at issue was retained verbatim,

8

violation" when the creditor learns of the debtor's bankruptcy.  In re ZiLOG, Inc., 450 F.3d 996, 1009 (9th Cir. 2006); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1192 (9th Cir. 2003).  Failure to take immediate affirmative steps to remedy the stay violation creates a "willful" violation of the stay, for which Section 362(k) mandates that a Court "shall" award actual damages.  California Employment Devel. Dept. v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147 (9th Cir. 1996).

In this case, the Debtors did all they could to give their Creditor notice of their bankruptcy case, including faxing a copy of their Notice of Filing to the Creditor the same day that they filed their petition.  The Bankruptcy Noticing Center also sent such a notice to the Creditor via United States Post.  When the Creditor continued to contact the Debtors, Ms. McLaughlin gave verbal notice of the bankruptcy filing.  Additionally, although the Debtors' case was briefly dismissed,[23] the Debtors gave verbal notice of the case reinstatement to the Creditor.  The Bankruptcy Noticing Center also mailed notice of reinstatement to the Creditor.  It is clear that the Creditor had notice of the Debtors' bankruptcy filing.  See In re Bloom, 875 F.2d 227.

Despite clear notice that the Debtors were under the Bankruptcy Court's protection, the Creditor persisted in willfully contacting the Debtors to seek collection of their claim.  Although at least one of the Creditor's representatives told Ms. McLaughlin that the initial stay violations were inadvertent, the Creditor failed to take immediate affirmative steps to remedy the stay violations and to prevent future violations.  See California Employment Devel. Dept., 98 F.3d 1147.  Not only did the Creditor place computer-generated calls to the Debtors, but individuals working for the Creditor also contacted the Debtors.  Although the Creditor's President stated that the Creditor was likely contacting the Debtor for proof of

---

but was re-designated Subsection 362(k)(1), and a new subsection, not at issue here, was appended to it.  Thus, Bloom, Abrams, and other cases decided under Section 362(h) have precedential effect for purposes of this Decision.

**23** Ironically, the Creditor refrained from contacting the Debtors during the period that their case was dismissed.

9

insurance or to offer a reaffirmation agreement,[24] the Creditor's records do not reflect any insurance issues after July, 2007, and the Creditor's records do not reflect any attempt to enter into a reaffirmation agreement with the Debtors. The Debtors received no copy of a reaffirmation agreement in the mail. The Court finds that the Creditor contacted the Debtors for the purpose of collecting a pre-petition claim against the Debtors, using the threat of incarceration as a means of harassment, and thereby willfully violated the Debtors' automatic stay on multiple occasions.

**B. The Damages To Be Awarded**

Because the Court finds that the Creditor willfully violated the Debtors' automatic stay, Section 362(k) requires that the Court award to the Debtors their actual damages. In re Ramirez, 183 B.R. 583 (9th Cir. B.A.P. 1995). The Debtors have requested that they be awarded lost wages and compensation in the form of billable attorney hours on this matter, as their actual damages, as well as emotional distress damages.

The Ninth Circuit Bankruptcy Appellate Panel has stated that "actual damages" are not limited to a specific dollar amount, but should rather be a money judgment compensating the debtor for actual injury and harm suffered. In re Roman, 283 B.R. 1, 9 (9th Cir. B.A.P. 2002). Actual injury and harm include emotional distress suffered by a debtor, and a Court may award emotional distress damages without requiring the debtor to present medical affidavits or receipts. In re Dawson, 390 F.3d 1139, 1150-51 (9th Cir. 2004); Eskanos & Adler v. Leetien, 309 F.3d 1210 (9th Cir. 2002). However, all actual damages must be proven to have been suffered, and the Court must find a causal connection between the emotional harm and the stay violation. Dawson, 390 F.3d at 1150-51; Eskanos & Adler,

---

[24] Such communications, which are not communications made for the purpose of collecting a debt or obtaining control or possession over estate property, would not violate the Debtors' automatic stay. See 11 U.S.C. §§ 362(a) (designating acts prohibited by the automatic stay); Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 424 (6th Cir. 2000) (holding that a secured creditor is not prohibited by the stay from inquiring as to a debtor's intent regarding a secured debt).

309 F.3d 1210.  The Court finds that in this case, the Debtors have proven actual damages in the form of lost wages and emotional distress.[25]

Section 362(k) and the cases cited above clearly support the Debtors' request for compensation for lost wages, in the amount of $480, because of the willful violation of the stay by the Creditor.  The Debtors are entitled to the wages lost during that time due to their attendance at hearings concerning the stay violation; the time they spent preparing their legal memorandum, other pleadings, and exhibits; the time taken off from work to ensure that criminal charges had not been filed against them; and the time taken off from work due to stress-induced physical malaise between the time of the Debtors' bankruptcy filing on August 31, 2007, and the time of the October 23, 2007 evidentiary hearing.  The Court concludes that, based upon the Debtors' testimony, Mr. McLaughlin normally works eight hours a day and earns $12 per hour.[26]  He missed five days of work during the relevant time period,[27] and was therefore damaged in the amount of $480.[28]

The Debtors also request the sum of $15,000 as a damage award for the emotional distress they have suffered as a result of the Creditor's improper actions.   The continuing contact from the Creditor after the Debtors had attempted to create a "breathing space" for themselves by filing their Chapter 7 petition placed significant strain on the Debtors, who were already in a distraught state of mind because of the Creditor's aggressive pre-petition threats.  The Debtors testified that they were "devastated" that they were unable

---

[25] The Court cannot award the attorneys' fees requested by the Debtors for the many hours they spent prosecuting their case.  Attorneys' fees may be awarded by a Bankruptcy Court only where state law provides a basis on which to award attorneys' fees.  Travelers Cas. & Surety Co. of America v. Pacific Gas & Elec. Co., 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007).  In Arizona, pro se debtors are unable to recover any attorneys' fee that they have not actually paid or do not actually owe to an attorney, even when the pro se parties are themselves attorneys.  Lisa v. Strom, 183 Ariz. 415, 420, 904 P.2d 1239, 1244 (Ariz.App. 1995).

[26] See also Exhibit 2 and Debtors' "Response," Dkt. Entry No. 37.

[27] See also Id. and Debtors' "Response," Dkt. Entry No. 37.

[28] The damage computation is $12 x 8 hours = $96 x 5 = $480.

11

to obtain the respite from these threats that they (correctly) believed their bankruptcy proceeding should have offered.

They testified that after each message or phone call made to them by the Creditor, they were unable to sleep and felt extremely anxious and frightened. Mr. McLaughlin suffers from Crohn's Disease, a very serious disorder that is aggravated by stress. At times, his physical symptoms, such as chest pains and abdominal pains, were such that he was unable to attend work. When he could attend work, his stress was such that he was unable to concentrate adequately on the tasks at hand, which resulted in his having to relinquish a supervisory position he had obtained. He began to have panic attacks. Ms. McLaughlin, who works with young children as part of her educational degree program, testified that she was unable to concentrate on her activities. She was also unable to concentrate while attending her paying job, because she was so worried that her vehicle would be repossessed while she was at work or that her husband would be arrested. Ms. McLaughlin could not attend to her school work, either, and fell behind by about two weeks' worth of work. The Court concludes that the Debtors have shown, through ample evidence, that their emotional trauma, with its accompanying physical symptoms, was caused by the Creditor's ongoing refusal to cease contacting the Debtors. The ongoing violation of the stay by the Creditor caused substantial emotional distress to the Debtors. The Court awards each Debtor the sum of $3,000 for the emotional distress that each has suffered.[29] Therefore, the Court awards the Debtors the aggregate amount of $6,000 for emotional distress.

---

**29** In assessing damages, the Court relies, in part, on the decision of United States v. Flynn (In re Flynn), 185 B.R. 89, 93 (S.D.Ga. 1995), a case also cited with approval by the Ninth Circuit in its opinion of In re Dawson, 390 F.3d 1139, 1150-51 (9th Cir. 2004). In Flynn, the court awarded the debtor $5,000 in emotional distress damages after, as a result of the IRS violating the automatic stay by freezing the debtor's bank account, the debtor was forced to cancel her son's birthday party. In this case, the threat of incarceration and the fear of losing the family car despite their bankruptcy filing warrants a damage award for each of the debtors.

Case 2:07-bk-04375-SSC    Doc 45    Filed 10/30/07    Entered 10/30/07 12:52:54    Desc
Main Document      Page 12 of 13

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that Red Mountain Funding, LLC willfully violated the Debtor's automatic stay by repeatedly contacting and harassing the Debtors, despite having received several forms of notice that the Debtors were involved in an active bankruptcy case. The Debtors are entitled to recover the actual damages, including emotional distress, caused by the stay violation. Mr. McLaughlin is awarded the sum of $480 for his lost wages. Each Debtor is also awarded the amount of $3,000 for the emotional distress that each has suffered. Based upon the foregoing, the Court awards the total amount of $6,480 to the Debtors. The Court will execute a separate order incorporating this Memorandum Decision and a form of judgment.

**DATED this 30th day of October, 2007.**

*[signature]*

**Honorable Sarah Sharer Curley**
**United States Bankruptcy Judge**

BNC to Notice.